1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10   FRANK ELI HEARD,                          Civil No.    09-cv-2117-POR

11                             Petitioner,      **ORDER DENYING SECOND
                                                AMENDED PETITION FOR WRIT OF**
12              v.                              **HABEAS CORPUS**

13   F GONZALEZ, et al., Warden                 **[ECF No. 31]**

14                             Respondent.

15                            **I. INTRODUCTION**

16         On September 25, 2009, Petitioner Frank Eli Heard ("Petitioner"), a state prisoner

17   proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF

18   No. 1).  On October 20, 2009, this Court dismissed the case without prejudice because Petitioner

19   failed to name a proper Respondent.  (ECF No. 3).  On Norvermber 20, 2009, Petitioner filed a First

20   Amended Petition.  (ECF No. 7).  On January 11, 2010, Petitioner consented to the exercise of

21   jurisdiction over the matter by United States Magistrate Judge Louisa S Porter.  (ECF No. 13).  On

22   January 21, 2010, Defendant filed an Answer to Petitioner's First Amended Petition.  (ECF No. 14).

23   On November 24, 2010, this Court granted Petitioner leave to file a Second Amended Petition (ECF

24   No. 33).  The Court has construed Respondent's Answer to Petitioner's First Amended Petition as

25   their Answer to Petitioner's Second Amended Petition.[1]  On January 18, 2011, Petitioner filed a

26   Traverse to his Second Amended Petition.  (ECF No. 39).

27

28         [1]The Court shall address this decision in more detail in its discussion of the procedural
     background.

1    This Court has reviewed the Petition (ECF No. 1), Respondent's Answer (ECF No. 14),

2    Petitioner's Traverse (ECF No. 39), and all supporting documents.  After a thorough review, this

3    Court finds Petitioner is not entitled to the relief requested and RECOMMENDS the Petition be

4    **DENIED**.

5                                    **II. PROCEDURAL BACKGROUND**

6    Petitioner was convicted of two counts each of committing attempted willful, deliberate, and

7    premeditated murder pursuant to California Penal Code §§ 664, 187.  (Lodgment 1 at 1-2).  On

8    January 18, 2008, he was sentenced to a term of 23 years plus 80 years to life.[2]  *Id* at 2.

9    Petitioner filed an appeal to the California Court of Appeal, Fourth Appellate District,

10   Division One.  (Lodgement 1).  On February 24, 2009 the Court of Appeal affirmed the judgment.

11   *Id*.

12   Petitioner filed a petition for review in the California Supreme Court.  (Lodgment 2).  On

13   May 20, 2009, the petition for review was denied.  (Lodgment 3).

14   On September 25, 2009, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28

15   U.S.C. § 2254.  (ECF No. 1).  On October 20, 2009, this Court dismissed the case without prejudice

16   because Petitioner failed to name a proper Respondent.  (ECF No. 3).  On Novermber 20, 2009,

17   Petitioner filed a First Amended Petition.  (ECF No. 7).  On January 11, 2010, Petitioner consented

18   to the exercise of jurisdiction over the matter by United States Magistrate Judge Louisa S Porter.

19   (ECF No. 13).  On January 21, 2010, Defendant filed an Answer to Petitioner's First Amended

20   Petition.  (ECF No. 14).  On November 24, 2010, this Court granted Petitioner leave to file a Second

21   Amended Petition (ECF No. 33), and since the sole claim presented in Petitioner's proposed Second

22   Amended Petition (that of denial of a fair trail for failure to admit hearsay statements) is the same

23   claim presented in his First Amended Petition, and Respondent addressed this claim in his Answer to

24   Petitioner's First Amended Petition, the Court shall construe Respondent's Answer to Petitioner's

25   First Amended Petition as their Answer to Petitioner's Second Amended Petition.  On January 18,

26   2011, Petitioner filed a Traverse to his Second Amended Petition.  (ECF No. 39).

27   _____

28        [2]The sentence reflects Plaintiff's plea of guilty to voluntary manslaughter, a count arising from a different incident that was initially to be tried with the attempted murder counts, but was later severed.  *See* ECF No. 1 at 2.

### III. STATEMENT OF FACTS

The following facts are taken from the California Court of Appeal opinion in *People v. Heard*, No. SCD193832 (Cal. Ct. App. Feb 24, 2009). (Lodgment 1). The Court presumes these factual determinations are correct pursuant to 28 U.S.C.A. § 2254(e)(1). The court stated:

> Heard, codefendant Mills, Ricky Pangelinan, Michael White, Roosevelt White, and Bobby Jones are members of the West Coast Crips gang. The West Coast Crips gang territory includes the Logan Heights area. Michael and Roosevelt White lived in an apartment complex on K street in this area that was a frequent gang hangout.
>
> On January 3, 2005, Jessica Godinez borrowed a white Mitsubishi Galant and drove to Michael White's apartment at around 7:00 p.m. After she arrived, she gave him a ride to cash a check. Godinez told the police that Heard came along, and on their way back they picked up Mills on L Street. Godinez said that later that evening, Heard, Mills, and possibly Michael White borrowed the Mitsubishi from Godinez and were gone for about 30 to 60 minutes.
>
> At about 8:15 p.m. that same evening, San Diego Police Detective Steven Hobbs and Officer Richard McCoy were conducting a traffic stop in West Coast Crips territory. They observed a four-door Mitsubishi Galant containing four African-American males wearing dark-colored clothing commonly worn by West Coast Crip members. As the Mitsubishi approached Detective Hobbs and Officer McCoy, the occupants first looked away with a "deer in the headlights" expression. Detective Hobbs recognized Mills in the front passenger seat based on a traffic stop involving some West Coast Crips in the same car a month earlier.
>
> Shakyla Bell testified that on the evening of January 3, she and some friends were walking to a market on 47th Street when a white four-door vehicle drove by them and someone inside the vehicle said, "What's crackin, cuz?" Bell recognized this as a gang statement commonly used by Crips, but not by the Bloods from her neighborhood. Bell's group ignored the comment, walked into the store, and then walked back to where they were hanging out at a house on "T" Street. The group included Bell, Simon Judge, Terrance Hillman, James Compare, and others.
>
> The white Mitsubishi drove past the "T" Street house. The front passenger, a Black male with a bald head, made eye contact with Compare and then quickly leaned back in the seat. The Mitsubishi sped off, and then quickly turned around and passed by a second time. This time, the front passenger, who was wearing a dark-colored hooded sweatshirt and had braids in his hair fired 6 to 10 gunshots toward the group. Hillman was struck once in the leg, and Judge was struck in the head and hip.
>
> Later that evening, Pangelinan was walking to his girlfriend's house when he ran into a group of his friends, including Heard, Mills, Jones, and Michael and Roosevelt White. While they were walking, Heard told Pangelinan, "I got me one," "I got a slob nigga," which Pangelinan understood to mean that Heard shot a Blood gang member. "Slob" is a derogatory term for a Blood. The group then continued walking to the store and back to the White residence.
>
> At the White residence, Michael White retrieved a box of ammunition from underneath his bed and placed it between Heard and Mills. Heard and Mills then removed guns from their persons and reloaded them. Mills had a chrome .22-caliber gun with a pearl handle. Heard had a larger, black revolver. After they reloaded the guns, Heard and Mills traded guns and

- 3 -

each placed his gun between his waist and pants.

Meanwhile, Detective Hobbs had responded to the scene of the shooting on "T" Street and observed .22-caliber shell casings in the front yard of the house. Witness descriptions of the vehicle involved in the shooting matched the description of the Mitsubishi parked on the street in front of the White residence, which was a known West Coast Crips hangout, and the police maintained surveillance of the vehicle.

Later that night, Mills, Pangelinan and Godinez walked outside the White residence in order to drive to a drug house. The walked to the Mitsubishi, checked the interior for gun shells, and drove away. Detective Hobbs quickly pulled the Mitsubishi over. While illuminating the car with his spotlights, Detective Hobbs observed Mills nervously looking over his shoulder, appearing to be yelling at Godinez, who was driving.

Mills ordered Godinez to flee from the police. As Detective Hobbs walked toward the Mitsubishi, it suddenly sped off and Detective Hobbs and other officers gave chase. At one point during the chase, Mills removed a gun from his pants and threw it out of the window. The chase continued down Highway 94, and eventually came to an end after Mills told Godinez to pull over.

Later that night, a .22-caliber semiautomatic handgun was found in the area where Mills threw the gun out of the window. Three of the bullets in the gun were stamped with "REM" which matched the shell casings found at the scene of the shooting. It was subsequently determined that the .22-caliber shell casings found at the scene of the shooting were fired from the recovered gun. Gunshot residue was found on Mill's right hand.

Detective Carter later interviewed Bell, showed her a six-pack photographic lineup containing Heard's picture, and asked about the person who said, "What's crackin' cuz?," Bell said Heard's picture "looked like him from afar."

On January 24 the police brought Heard in for questioning. Heard initially denied he had been in possession of a gun earlier that evening, but later said he had possessed a gun and discarded it in some bushes. The police drove Heard to the area but were unable to locate the gun. When the police again asked Heard about the location of the gun, he told them he hid it in the first police car into which he had been placed that evening. After searching the car, the police located a .25-caliber chrome pistol with a pearl handle wedged in the back seats. The .25-caliber shell casings found at the scene of the "T" Street shooting were later determined to have been fired from that gun. Heard's fingerprint was found on this gun.

A videotape of a 2005 New Year's party was found inside the Mitsubishi. The tape was made on either December 31, 2004, or January 1, 2005. At one point, Heard was shown holding a .25-caliber gun that appeared to be the same gun recovered from the police car on January 24. At another point, Heard is shown rapping about the Crips gang and glorifying a prior killing of some "slob nigga" Bloods.

The police interviewed Pangelinan several times after his arrest. Pangelinan told the police he was at the White residence on the night of the shooting and saw Heard, Mills, the Whites, and Godinez in the bedroom, where Heard told him, "We busted on some slob niggas."

Heard testified he was a member of the West Coast Crips, and the language used in the New Year's Eve party video was common to rap music. Heard possessed a .22-caliber handgun that evening, and it was shown in the video. When he was not in possession of the handgun, he stored it in a "stash" spot where it was accessible to other members of his gang. The gun that he possessed and the police found on January 24, was a different, .25 caliber gun.

- 4 -

Heard testified he was not involved in the January 3 shooting.  He was not in the white Mitsubishi that evening, and he did not shoot anyone.  On that date, he was not in possession of the gun the police found of January 24.  He first came into possession of that gun a few days before January 24.

## IV. STANDARD OF REVIEW

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  Additionally, the state court's factual determinations are presumed correct, and Petitioner carries the burden of rebutting this presumption with "clear and convincing evidence."  28 U.S.C.A. § 2254(e)(1) (West 2006).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.  *Id.*  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must

1  conduct an independent review of the record to determine whether the state court's decision is

2  contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado*

3  *v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-

4  76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not

5  cite Supreme Court precedent when resolving a habeas corpus claim.  *Early*, 537 U.S. at 8.  "[S]o

6  long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court

7  precedent,]" *Id.*, the state court decision will not be "contrary to" clearly established federal law.  *Id.*

8  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or

9  principles set forth by the Supreme Court at the time the state court renders its decision."  *Andrade*,

10  538 U.S. at 72.

11       Where a petitioner alleges a state court decision is based upon an unreasonable determination

12  of the facts in light of the evidence presented in state court, he or she must demonstrate that the

13  factual findings upon which the state court's adjudication rests is objectively unreasonable.  *Miller-*

14  *El v. Cockrell*, 537 U.S. 322, 340 (2003).

15                                              **V.DISCUSSION**

16       The instant petition raises one ground for relief.  Petitioner contends the trial court denied

17  Petitioner his constitutional right to present a complete defense by precluding hearsay statements

18  Petitioner's co-defendant Wade Mills made before trial.  (Pet. at 6-7).  Petitioner contends the

19  statements should have been deemed admissible hearsay under California Evidence Code § 1220,

20  the party admissions provision.  (*Id.* at 6).  Petitioner contends his right to due process under the

21  Fourteenth Amendment, and his right to present a complete defense under the Sixth Amendment

22  were violated because the statements were withheld.  (*Id.* at 8.)  In his direct appeal to the California

23  Court of Appeal, Petitioner raised the same claim, which was rejected on the merits.  (Lodgment No.

24  1 at 9-12).  Petitioner filed a petition for review with the Supreme Court of California, but it was

25  denied without comment on May 20, 2009.  (Lodgment No. 3).

26       Respondent contends Petitioner is precluded from raising this claim here under section

27  2254(s) of Title 28 of the United States Code.  (ECF No. 14-1 at 7.)  Respondent alleges the state

28  courts' denials on the merits are consistent with, and do not involve an unreasonable application of,

1   federal law as determined by the United States Supreme Court.  (*Id.*)  Respondent further contends

2   the state court's rulings were not based on an unreasonable determination of the facts.  (*Id.*)

3          *a.*     *Factual Background*

4        Petitioner's co-defendant Wade Mills, also a member of the West Coast Crips, was arrested

5   the morning following the January 3 shooting, and gave a statement to police that morning and also

6   on November 22, 2006.  (Lodgment 1 at 8-9).  During the interviews, Mills refused to identify

7   anyone who was in the vehicle with him at the time of the shooting, and claimed he had not seen

8   Petitioner since over a week prior to the shooting.  (*Id.* at 9.)  Petitioner testified at trial that he was

9   not present at the scene of the crime, but Mills did not testify at trial. (*Id.* at 8,)  The trial court found

10   that Mills's pretrial statements did not "rise to the dignity of an admission," and there were "no

11   realistic indicia of trustworthiness."  (Lodgment 1 at 9.)

12          *b.*     *The Law*

13        To present a cognizable federal habeas corpus claim, a state prisoner must allege a violation

14   of federal laws or the Constitution. See 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68

15   (1991). Habeas relief is not available for an alleged error in the interpretation or application of state

16   law. *Jackson*, 921 F.2d at 885; *McCotter*, 786 F.2d at 700. Federal courts may grant habeas relief

17   only to correct errors of federal constitutional magnitude. *Oxborrow*, 877 F.2d at 1400.

18        Specifically with regard to evidentiary rulings, "a state court's procedural or evidentiary

19   ruling is not subject to federal habeas review unless the ruling violates federal law, either by

20   infringing upon a specific federal constitutional or statutory provision or by depriving the defendant

21   of the fundamentally fair trial guaranteed by due process." *Walters v. Maas*, 45 F.3d 1355, 1357

22   (9th Cir. 1995).   Therefore, a federal court may not disturb on due process grounds a state court's

23   decision to exclude hearsay evidence unless denial of that evidence "was arbitrary or so prejudicial

24   that it rendered the trial fundamentally unfair." *Walters*, 45 F.3d at 1357; *Jammal v. Van DeKamp*,

25   926 F.2d 918, 919 (9th Cir. 1991).

26        It is incontrovertible that the Constitution ensures criminal defendants have a right to "a

27   meaningful opportunity to present a complete defense." *Crane v. Kentucky* 476 U.S. 683, 690

28   (1986).  And the Sixth Amendment is one of the primary safeguards of the right to present a

1  complete defense. *See Strickland v. Washington*, 466 U.S. 668, 684-5 (1984) (" The Constitution

2  guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair

3  trial largely through the several provisions of the Sixth Amendment"). The right to present a

4  complete defense necessarily includes a right to present evidence in support of one's defense, but

5  this right is not absolute. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483

6  U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). And, "[a]s a result, state

7  and federal rulemakers have broad latitude under the Constitution to establish rules excluding

8  evidence from criminal trials." *U.S. v. Scheffer*, 523 U.S. 303, 308 (1998). The Supreme Court has

9  held that excluding evidence does not offend a criminal defendant's right to present a complete

10 defense unless evidence bearing assurances of trustworthiness is excluded or restrictions on

11 presenting evidence are arbitrarily applied. *See Washington v. Texas,* 388 U.S. 14, 23 (1967) ;

12 *Chambers,* 410 U.S. at 302; *Rock,* 483 U.S. at 55-56.

13       *c.*     *Appellate Court's Decision*

14      In the last reasoned state court decision, the Court of Appeal held the trial court properly

15 excluded Petitioner's co-defendant's pretrial statements. (Lodgment 1 at 12). The Court of Appeal

16 determined because Petitioner was seeking to admit the evidence for the purpose of exculpating

17 himself, rather than inculpating Mills, the declarant, Evidence Code § 1220 and case law do not

18 support a hearsay exception to the statements. Specifically, the Court of Appeal held:

19      [Petitioner] asserts the court committed state law error by refusing to allow him to
20 present Mills's interview statements in order to both exculpate himself and inculpate Mills.
   He also asserts the court's refusal to admit Mills's statements was a federal constitutional
21 violation as it amounted to a denial of his constitutional rights under the Fifth, Sixth and
   Fourteenth Amendments to the United States Constitution to present witnesses on his behalf
22 and to present a complete defense to the charges against him. These assertions are unavailing.

23      The court did not err in excluding the hearsay evidence of Mills's extrajudicial
   statements because [Petitioner] did not offer that evidence *against* Mills, the declarant, as
24 Evidence Code section 1220 and relevant case authorities require. As already discussed,
   evidence of the statement of a party, in order to be admissible under the hearsay exception set
25 forth in Evidence Code section 1220, must be offered *against* the declarant party. (Evid.
   Code, § 1220; *People v. Horning, supra,* 34 Cal.4th at p. 898; *People v. Carpenter, supra*, 21
26 Cal.4th at p.1049; *Castille, supra*, 129 Cal.App.4th at p. 876.)

27      Here, the primary thrust of [Petitioner's] argument to the court, which he made in his
   motion in limine for leave to present evidence of Mills's statements, was that the statements
28 "provide[d] *exculpatory* evidence that [could] be used in [Petitioner's] defense" (italics
   added) and that the statements "should be placed before the trier of fact for evaluation in order
   to uphold [his] Fourteenth Amendment right to Due Process." [Petitioner] also argued that if

the court excluded the evidence of Mills's statements, he "would be denied fundamental Due Process rights by discarding reliable, *exculpatory* evidence with a high probative value relating to [his] defense that he was not present in the shooting vehicle." (Italics added.) As already noted, [Petitioner] continues to rely on these arguments on appeal.

Because the evidence of Mills's extrajudicial statements was hearsay, as Heard has acknowledged, and Heard's manifest primary interest in presenting that evidence to the jury was to exculpate himself rather than inculpate Mills, the declarant party, we conclude the hearsay exception for a statement of a party set forth in Evidence Code section 1220 did not apply, and thus the court properly excluded that evidence.

[Petitioner's] contention that the court's exclusion of the proffered evidence of Mills's statements deprived him of his constitutional right to present a complete defense is unavailing. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment [citation], or in the Compulsory Process or Confrontation clauses of the Sixth Amendment [citations], the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (*Crane v. Kennedy* (1986) 476 U.S. 683, 690.) However, "[a] defendant's right to present relevant evidence is not unlimited.... [Citations.] A defendant's interest in presenting such evidence may thus '"bow to accommodate other legitimate interests in the criminal trial process."'" (*U.S. v. Scheffer* (1998) 523 U.S. 303, 308, fn. Omitted.) One such interest is adherence to the rules of evidence. (*Taylor v. Illinois* (1988) 484 U.S. 400, 410; *People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1756.) The rule governing the admissibility of a statement of a party, as codified in Evidence Code section 1220, is one such standard rule of evidence. (Lodgment 1 at 10-12).

   d.   *Analysis*

In ruling the trial court properly deemed the statements inadmissible hearsay, the Court of Appeal concluded the evidence was properly excluded primarily relying on California law. (Lodgment 1 at 10-12.) The record supports this finding. The Court of Appeal engaged in an Evidence Code § 1220 analysis and determined the rule excepts hearsay only when it is being offered against the declarant because of the inherent reliability of such statements. (*Id.*) Therefore, to the extent Petitioner seeks a federal court determination that exclusion of Mills's pretrial statements was improper pursuant to California law, his request fails under *Estelle v. McGuire*.

Furthermore, the Court of Appeal's decision the trial court properly ruled Heard's statement was inadmissible hearsay was neither contrary to nor an unreasonable application of clearly established federal law. First, with regard to Plaintiff's due process claim, the Court of Appeal's decision was neither arbitrary nor prejudicial so as to allege a due process violation. *See Walters*, 45 F.3d at 1357. The Court of Appeal engaged in a detailed evidentiary analysis of Evidence Code § 1220. Specifically, the Court of Appeal determined the trial court did not err in excluding the hearsay evidence of Mills's extrajudicial statements because Petitioner did not offer that evidence against Mills, as required by Evidence Code § 1220. Thus, their ruling cannot be deemed arbitrary.

1    (Lodgment 1 at 10-12.)

2        Moreover, the record reflects a finding that substantial admissible evidence supported

3    Petitioner's conviction of attempted murder.  Several witnesses, including Petitioner, place him in

4    the vehicle used in the murder attempt on the night of the crime.  (Lodgment 1 at 4.)  A witness told

5    investigators Petitioner's picture in a six-pack lineup "looked like [the gunman] from afar."  (*Id.* at

6    7.)  Another witness testified Petitioner was bragging about committing the murder of a blood gang

7    member on the night of the crime.  (*Id.* at 5.)  Petitioner was later arrested with a pistol that was

8    determined to be the source of bullets recovered from the scene of the shooting.  (*Id.* at 7.)  In light

9    of the substantial inculpatory evidence independent of the hearsay statement placing Petitioner in the

10   murder vehicle, the Court of Appeal's ruling cannot be construed as "so prejudicial that it rendered

11   the trial fundamentally unfair."  *Walters*, 45 F.3d at 1357; *Jammal* 926 F.2d at 919.   Because the

12   Court of Appeal's ruling was neither arbitrary nor prejudicial, Petitioner has failed to demonstrate a

13   due process violation. *Fetterly*, 997 F.2d at 1300.

14       Second, the Court of Appeal's determination that Mills's statement was properly withheld

15   did not impede Petitioner's Sixth Amendment right to a fair trial.  According to *Chambers*,

16   Petitioner's alleged Sixth Amendment violation could rest either on a determination that Mills's

17   statements were reliable, but withheld, or that evidentiary rules were applied arbitrarily.  401 U.S. at

18   302*; See also Rock,* 483 U.S. at 55-56.  The Court of Appeal reasoned that Mills's pretrial

19   statements were unreliable because they were not offered for the purpose intended by the particular

20   hearsay exception.  (Lodgment 1 at 10-12).  This decision was neither contrary to federal law, nor an

21   unreasonable determination based on the facts. *Chambers*, 401 U.S. at 302*.*

22       Furthermore, in *Rock* the court noted "[i]n applying its evidentiary rules, a State must

23   evaluate whether the interests served by a rule justify the limitation imposed on the defendant's

24   constitutional right to testify."  *Rock* 483 U.S. at 56.  Here, as the Court of Appeal noted, the

25   limitations on Petitioner's right to present a defense are justified by the well-established prohibition

26   of hearsay statements.  Moreover, unlike the petitioner in *Rock*, the Petitioner here could and did

27   present his exculpatory claim by testifying at trial.  Thus, Petitioner can only contend Mills's

28   statements would have given his testimony more weight.  Because the Court of Appeal upheld the

1  courts actions based on a proper reading of the relevant hearsay exception, and because the withheld

2  evidence was presented to the jury by Petitioner himself, their decision was not contrary to federal

3  law and it was a reasonable decision based on the facts.  *See Rock* 483 U.S. at 56.

4         For the foregoing reasons, the Court of Appeal's decision that Petitioner's right to present a

5  complete defense was not offended is not contrary to federal law and it was a reasonable decision

6  based on the facts.  Accordingly, Petitioner's claim that his Constitutional right to a fair trial was

7  violated by excluding his co-defendant's pretrial statements is **DENIED**.

8                                   **VI.     CONCLUSION**

9         After thorough review of the record in this matter and based on the foregoing analysis, this

10 Court ORDERS the Petition for Writ of Habeas Corpus be **DENIED**.

11
                 **IT IS SO ORDERED.**
12
   DATED:  June 27, 2011
13

14                                         _____

15                                         LOUISA S PORTER
                                           United States Magistrate Judge
16 cc:          all parties

17

18

19

20

21

22

23

24

25

26

27

28

09cv2117-POR